UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JESUS GONZALEZ MOSQUEDA, | ) | 1:07-CV-01716 AWI JMD HC |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) | |
| | ) | |
| D.K. SISTO, Warden., | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Kern County Superior Court. Petitioner has been committed to state prison for a term of 13 years four months after being convicted of attempted voluntary manslaughter, assault with a firearm, and assault with a deadly weapon plus enhancements. (Answer at 1; Lodged Doc. 9.)

Petitioner filed an appeal in the California Court of Appeal (F046971). As to the appellant's statute of limitation argument, the Court remanded to the Superior Court to conduct an appropriate factual hearing. The appellate court modified the judgment as to count V changing the assault with a deadly weapon violation to assault with a firearm. The court affirmed the judgment in all other respects

in a reasoned opinion. (Answer at 5; Lodged Doc. 4.)

Petitioner filed a petition for review in the California Supreme Court (S144491). The court summarily denied review. (Answer at 5; Lodged Doc. 5.)

The Kern County Superior Court held a hearing to determine if the statute of limitations was tolled. Finding that the statue of limitations was indeed tolled the court ordered the original sentence reinstated. (Answer at 5; Lodged Docs. 6, 7, 8.)

Petitioner filed an appeal in the California Court of Appeal (F051915). The court affirmed the judgment in a reasoned opinion. (Lodged Doc. 9.)

Petitioner filed a petition for review with the California Supreme Court (S162888), which the court summarily denied. (Answer 5; Lodged Doc. 10)

On November 27, 2007, Petitioner filed the instant petition in the Eastern District of California. The petition raises the following two grounds for relief: 1) Petitioner's right to a jury trial was violated when the appellate court modified the jury conviction; changing the California Penal Code § 245(a)(1) violation (assault with a deadly weapon) to a § 245(a)(2) violation (assault with a firearm), and 2) Petitioner's Fourteenth Amendment due process rights were violated because the statute of limitations for the charge of attempted voluntary manslaughter had run.

On October 9, 2008, Respondent filed an answer to the petition.

Petitioner did not file a traverse to the answer.

## FACTUAL BACKGROUND[1]

On the evening of September 16, 1995, Ross Sessions (Sessions) met his friends Henry Alvarez (Alvarez) and Maria Mosqueda (Maria) at the Westfair Lounge in Bakersfield. Sessions knew Maria was Alvarez's girlfriend, and he saw Maria with Alvarez all the time. Sessions did not know Maria was married to appellant and had never seen appellant. Sessions visited with Alvarez and Maria for about 30 minutes.

At some point between 11:00 p.m. and midnight, Alvarez asked Sessions if he would escort Maria to her truck, and Sessions agreed. Alvarez remained in the bar, and Sessions and Maria walked into the parking lot and headed for her truck. Sessions testified that as they approached Maria's truck, they saw the driver's side windshield had been smashed, making it impossible to safely drive the vehicle. Maria became startled, shocked, and nervous when she saw the smashed window. She started to look around, and told Sessions that appellant's truck was parked across the street from the

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of May 11, 2006 and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). (Lodged Doc. 4 at 3-8)

bar. Sessions testified that he saw an old Ford pickup truck parked behind bushes, and it was not clearly visible "unless you looked."

Sessions testified they went back to the bar and he retrieved his cell phone. Sessions and Maria returned outside, and Sessions called the police to report the vandalism. Maria said something "half in English, half in Spanish" about her husband, but Sessions "just blew it off. I didn't give it any thought to it."

Sessions still was on the telephone with the police department when Maria said that appellant was approaching them. Sessions did not know appellant but Maria pointed out appellant to him. Sessions testified that appellant walked briskly toward them, Maria walked toward appellant, appellant and Maria met near her truck, and they "were hollering at each other." Appellant and Maria argued for a while in Spanish, and then appellant ran across the street, towards his truck. Sessions thought appellant was going to leave.

Sessions testified that appellant retrieved a rifle from the bed of his pickup truck, and ran back toward Sessions and Maria. Sessions and Maria were standing about five to 10 feet apart in the bar's parking lot, and appellant "starting going towards Maria more than me." Appellant continued to run towards them and Sessions recognized appellant's weapon as a .22-caliber rifle. Appellant held the rifle at his side and fired two shots in quick succession at Maria, wounding her in the abdomen.

Sessions kept his eyes on appellant and he did not realize at that time that Maria had been wounded. Sessions testified that appellant looked at him and continued to point the rifle in his direction. Appellant ran toward Sessions and continued to hold the rifle at his waist. Sessions thought he heard two or three more shots, but could not remember if appellant fired at him. Sessions was afraid appellant was going to shoot him. Sessions dropped his cell phone, ran and tackled appellant, and fought with him on the street. They struggled over the rifle and appellant hit Sessions "upside the head with the stock of the rifle." As a result of the blow, the rifle's stock broke apart. Sessions and appellant continued to fight, and the rifle's trigger mechanism jammed and cut the webbing on Sessions's left hand.

Sessions testified appellant ran back to his truck and drove away. Sessions returned to the bar and found Maria and realized she had been wounded. Several bar patrons assisted Maria and placed towels around her body, which were already soaked in blood. Sessions stayed with Maria and waited for an ambulance.

Bakersfield Police Officers Hughes and Kilgore responded to the bar on the dispatch about the damaged truck, and discovered Maria was severely injured from two gunshot wounds. Maria was moaning, crying, upset, and appeared to be in distress. Officer Hughes testified Maria was bleeding heavily and he believed her wounds could be fatal.

The officers spoke to Sessions, who was in pain, his hand was bleeding, he was obviously nervous, and appeared scared. Sessions walked through the parking lot and showed the officers what happened. Sessions told the officers that appellant fired at him two or three times. In the bar's parking lot, the officers found two expended .22-caliber rounds, one live .22-caliber round which had not been fired, and the rifle's broken stock.

In the early morning hours of September 17, 1995, Sessions and Maria were taken to the hospital. Sessions testified he suffered dizziness, swelling, and bruises from the struggle and blow to the head. Sessions was treated in the emergency room

for a contusion to the left occipital area of his scalp, and received four stitches on the webbing of his left hand. He was released that day.

Maria suffered two gunshot wounds to the abdomen and was actively bleeding when she was evaluated in the emergency room. One shot entered just below a rib, deflected off her hip bone, and exited her body. The other shot entered just below the right side of the rib cage, entered the abdomen, and remained in her body, and was potentially life-threatening because it was near major organs. Maria had abdominal surgery that day and the surgeons repaired the internal injuries. Maria was discharged from the hospital on September 20, 1995.

Officer Hughes spoke to Maria just after she arrived at the hospital, and she asked him to contact her son, Gabriel, to translate for her. Gabriel arrived at the hospital and acted as translator for Officer Hughes's interview with Maria. Maria was obviously in pain but more stable than when she was at the bar. Officer Hughes also spoke to Gabriel, who was angry and upset, and "wanted to act out in a violent nature" toward appellant.

On the night of the shooting, several officers searched the area for appellant and went to his house, but they were unable to find him. The officers continued their search after the shooting, but appellant was not located from 1995 to 2004. On July 7, 2004, officers located appellant at Plantation Elementary School in Kern County, laying concrete. Appellant was arrested and taken into custody. Appellant was still married to Maria.

Detective Herman Caldas interviewed appellant just after he was arrested, advised him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and appellant waived his rights. Caldas asked appellant about the 1995 shooting of his wife. Appellant denied any involvement. Caldas advised appellant that witnesses placed him at the scene, and appellant said a witness paid people to frame him. Appellant said he was attacked by three subjects that night, changed his story, and said that he wrestled with one person and the weapon accidentally discharged. Appellant said it was an accident and he did not want to kill Maria, and "that if he wanted to shoot her, that he would shoot her on each eye." Appellant said the weapon was a BB gun. Detective Caldas said Maria was shot with a .22-caliber rifle, and appellant said the gun did not work.

Appellant told Detective Caldas that he happened to be passing by the Westfair Lounge and saw Maria's truck, there were about 30 officers in the parking lot when he saw Maria, and the police were there the entire time when he fired two shots at her. Detective Caldas said that was ridiculous. Appellant said he just wanted to talk to Maria, and saw her walk out of the bar with another person. Appellant admitted that he argued with Maria. Appellant also admitted he went to his truck and retrieved a rifle, and wrestled the guy who was with Maria. Appellant said the gun did not work and he used it as a club, he never tried to kill Maria, and it was an accident. Appellant said he discarded the rifle at a farm and fled to Mexico after the shooting.

Appellant told Detective Caldas that he loved Maria and she was a good person, but she did not love him anymore. Caldas asked appellant if he was angry when he saw his wife leave the bar with another man. Appellant said he tried to obey the law, but he was a little angry and a little drunk that night. Appellant also said he was trying to defend himself, it was "fate what had happened," and he did not feel guilty. Appellant said he assumed law enforcement would never catch up with him. Appellant repeatedly said it was an accident, but refused to explain how the "accident" occurred.

      At the conclusion of the interview, appellant asked for permission to call Maria but Detective Caldas refused because she was a crime victim. Caldas asked if appellant had recently spoken to Maria, and appellant said they had talked the previous day.

      After appellant was arrested, Detective Caldas called Maria, who was cooperative and willing to help. After that first conversation, however, Maria did not return Caldas's calls. During the course of trial, the prosecutor advised the court that Maria was unavailable, the investigator had not been able to serve Maria with a subpoena, and Maria's family indicated she did not want to be involved in the prosecution and wanted the matter dropped.

      At trial, Gabriel Mosqueda (Gabriel), the 30-year-old son of appellant and Maria, was called as a prosecution witness. Gabriel testified that he was contacted by an officer the night of the shooting, informed of his mother's injuries, and immediately went to the hospital to see her. Gabriel spoke to an officer at the hospital, but he could not remember what he said. Gabriel testified that he saw appellant a short time after the shooting, but he could not recall the details. Gabriel testified that he was not angry at his father, and he did not want his father to go to jail.

      A defense investigator testified about his interview with Ross Sessions just before the instant trial. According to the investigator, Sessions said someone hit him from behind while he was looking at the damage to Maria's car, he turned around and saw a Mexican male holding a rifle, the rifle was never pointed at him, they struggled over the rifle, and two shots were fired. At trial, however, Sessions disputed the investigator's account of his statement, and testified the investigator gave the impression he worked for the prosecution rather than the defense, and the investigator tried to "put words" into Sessions's mouth.

      Appellant was convicted of attempted voluntary manslaughter of Maria, as a lesser included offense of attempted murder; assault with a firearm on Maria and Sessions, and assault with a deadly weapon on Sessions, with enhancements found true as to personal use of a firearm and infliction of great bodily injury. Appellant was found not guilty of attempted murder of Sessions.

      On appeal, appellant asserts the instant prosecution was time-barred because the information failed to show the action against appellant was commenced within the statutory period; there was insufficient evidence that Sessions suffered great bodily injury; and appellant was improperly convicted in count VI of assault with a deadly weapon on Sessions because he only used the rifle as a club.

(Lodged Doc. 4 at 3-8)

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.

1  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located
2  within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court
3  has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme

Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III. Review of Petitioner's Claims

#### A. Ground One

Petitioner argues that the state appellate court's modification of California Penal Code § 245(a)(1) conviction to a § 245(a)(2) conviction violated his Sixth and Fourteenth Amendment right to

a jury trial.

"Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information *or to reverse a conviction*." Fed. R. Crim. P. 7(c) (emphasis added). The state court conducted a thorough analysis as to whether Petitioner was prejudiced by being convicted under California Penal Code § 245(a)(1) instead of § 245(a)(2) and found that he was not because Petitioner "was not mislead to his prejudice." (Lodged Doc. 4 at 40.) As will be discussed below, the state court's finding that Petitioner was not prejudiced by the error was not objectively unreasonable; however, the appellate court's ability to change Petitioner's conviction without compromising his right to due process guaranteed by the federal constitution is questionable.

To begin, the Court notes that there is no applicable Supreme Court precedent on the issue of whether it is a constitutional violation for the Court of Appeal to modify a conviction in order to fix a citation error.[2] The appellate court relied on authority found in California Penal Code § 1260[3] and *People v. Neal*, 159 Cal.App.3d. 69 (1984). In *Neal* the defendant was convicted and given a three year enhancement on his sentence but the statute on which the prosecution relied only allowed for a one year enhancement. The court of appeal affirmed the judgement because they found that the petitioner had been fully informed that the prosecution sought the three year enhancement and petitioner could not show that he was prejudiced by the citation error. *Id*. The appellate court analogized the instant case to *Neal* because neither defendant was prejudiced by the citation error, but at no point did the court show where in *Neal* they drew the authority to change Petitioner's conviction from that given by the jury.

Whether or not the appellate court had the authority to change Petitioner's conviction is immaterial to the final outcome of this case however, because regardless of whether the court acted in violation of

---

[2] The closest cases that the Court found analogous to the issue at hand involved citation errors in the indictment. United States v. Garcia, 2 F.3d 1158 (9th Cir. 1993) (Where an incorrect statutory citation to a statute's penalty rather than substantive section is harmless unless it prejudices the defendant.); United States v. Fekri, 650 F.2d 1044, 1046 (9th Cir. 1981) (holding that a mere citation error in an indictment that does not prejudice the defendant does not require reversal).

[3] "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings *as may* be just under the circumstances." Cal Penal Code § 1260.

the federal constitution, any constitutional error made is harmless under the standard articulated in *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993). On collateral review, a federal court may grant habeas relief based on instructional error only when that error had substantial and injurious effect or influence in determining the jury's verdict. *Id*. As stated above, the appellate court reasonably found that Petitioner was not prejudiced by the citation error. Petitioner had full notice that he had been charged with aggravated assault committed by using a rifle, which is a firearm. This assault with a firearm is what Petitioner was ultimately convicted of even though the jury called it assault with a deadly weapon. Also, it was not unreasonable for the jury to convict Petitioner of assault with a deadly weapon because, as the state court points out, CALJIC No. 9.02 is the applicable instruction for both assault with a deadly weapon and assault with a firearm and the only difference between the two is that assault with a deadly weapon must be with an "instrument other than a firearm," a qualification that the trial court judge left out of the jury instructions. (Lodged Doc. 4 at 36.) Because the qualifying phrase was left out of the jury instruction the jury actually convicted Petitioner using the exact same elements they would have used had he been charged with assault with a firearm. Not only did Petitioner have adequate notice of the crime for which he was charged and convicted but he fails to point to any evidence that had he been charged correctly the jury would have reached a different result. Because any constitutional error that might have been made is harmless the Court cannot grant a writ on this ground.

**B. Ground Two**

Petitioner argues that a violation of his Fourteenth Amendment right to due process occurred when the jury was instructed on, and ultimately found Petitioner guilty of, attempted voluntary manslaughter. The Superior Court judge instructed the jury on attempted murder and the lesser included offense of attempted voluntary manslaughter. In Petitioner's first appeal to the California Supreme Court (No. S144491) he claimed that the statute of limitations had run on the lesser included offense and that the Court of Appeal improperly relied on *Stanfill*[4] rather than *Beasley*[5]

---

[4] People v. Stanfill, 76 Cal.App.4th 1137 (1999)

[5] People v. Beasley, 105 Cal.App.4th 1078 (2003)

1  with regard to "the proper rules to apply to time-barred lesser included offenses when the charged
2  offenses are not time barred." (Lodged Doc. 5 at 12.) The state supreme court summarily denied
3  review and the case was remanded to the Superior Court per the Court of Appeal's order.  In his
4  second claim to the California Supreme Court (S162888) Petitioner alleged that the arrest warrant
5  was invalid because it did not include the exact time of execution and implored the court to settle
6  a discrepancy between sections 814 and 815 of the California Penal Code so as to make the
7  requirements clear.  Again, the court summarily denied review.

*I. Exhaustion*

The governing statute for state prisoners seeking federal habeas relief requires that the petitioner comply with the exhaustion rule stated therein–specifically that a habeas petition "shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).  The exhaustion requirement mandates that a petitioner fairly present the federal claims raised in the federal habeas petitioner before the state courts, including a state supreme court with powers of discretionary review,  in order to afford the state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971); *see* Duncan v. Henry, 513 U.S. 364, 365-66 (1995); *see also* Baldwin v. Reese, 541 U.S. 27, 29 (2004).  " 'Fair presentation requires that a state's highest court has a 'fair opportunity to consider...and to correct [the] asserted constitutional defect." Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir. 2008) (quoting Lounsbury v. Thompson, 374 F.3d 785, 787 (9th Cir. 2004) (quoting Picard, 404 U.S. at 276)).  Furthermore, "[t]o 'fairly present' [a] federal claim to the state courts, [a petitioner must] alert the state courts to the fact that he [is] asserting a claim under the United States Constitution. [Citation] The mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Hivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing Duncan, 513 U.S. at 365-366 in holding that failure to cite to federal constitutional provisions in state court leaves a claim unexhausted).

A claim that is not the "substantial equivalent" of the claim presented in the state courts does

not satisfy the fair presentment requirement.  Picard, 404 U.S. at 278 (holding that exhaustion requirement not met where petitioner's state claim included operative facts but lacked the legal theory presented in federal habeas claim); Lopez v. Schiro, 491 F.3d 1029, 1040 (9th Cir. 2007). A claim fails to be substantially equivalent where the claim is conceptually distinct from the claims raised before the state courts despite raising the same federal constitutional provisions. Gray v. Netherland, 518 U.S. 152, 164-165 (1996).

An applicant seeking habeas relief is required to plead his claim with considerable specificity before the state courts in order to satisfy the exhaustion requirements.  Rose v. Palmateer, 395 F.3d 1108, 1111 (9th Cir. 2005); Peterson v. Lampert, 319 F.3d 1153, 1157-1159 (9th Cir. 2003); Shumway v. Payne, 223 F.3d 982, 998 (9th Cir. 2000) (holding that a claim is not fairly presented unless the petitioner specifically indicated that those claims were based on federal law); *see also* Kelly v. Small, 315 F.3d 1063, 1068 n. 2 (9th Cir. 2003) (holding that "it was incumbent upon Petitioner to set forth the alleged failure to file a motion to recuse as an independent constitutional claim in order to give the California Supreme Court a 'full and fair opportunity' to act upon it, rather than hope that the court would infer this Sixth Amendment claim from the related failure to object").  The Supreme Court has found that a petitioner's failure to explicitly cite to a federal constitutional provision in relation to the specific claim, while citing to such provisions in another claim, does not satisfy the requirement of fair presentment.  Baldwin, 541 U.S. at 29-31 (holding that petitioner failed to exhaust state remedies when he alleged a Sixth Amendment violation for his claim that trial counsel had provided ineffective assistance but failed to cite to constitutional authority when alleging, in a separate claim, that his appellate counsel had provided ineffective assistance).

At no point did either of the petitions for review submitted to the California Supreme Court even hint at a Fourteenth Amendment claim, or any other federal constitutional claim for that matter.  In fact, both petitions revolved solely around conflicts of California law.   Because no federal claim was ever raised to the highest state court Petitioner failed to exhaust his state court remedies.  However, this court may still review the claim to determine if it is entirely without merit.

*II. Colorable Federal Claim.*

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Ninth Circuit has interpreted section 2254(b)(2) to allow a federal court to deny an unexhausted petition on the merits "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005). On that authority this court will now examine whether Petitioner presents a colorable federal claim.

This Court's review is limited to determining whether the state court unreasonably applied clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1); Delgado v. Lewis, 223 F.3d at 979-80. Issues of state law are a state law concern, not cognizable in federal habeas proceedings unless the state trial court's decision is error rising to the level of a due process violation. Estelle v. McGuire, 502 U.S. 62, 67 (1991). In this case Petitioner is asserting that the statute of limitations for a state crime was not applied correctly. The statute of limitations is set forth by the state in the applicable criminal statute, in this case Cal. Penal Code §§ 192, 801, making it a matter of state law. Because the application of state law by the state court does not raise a colorable federal claim no writ of habeas corpus can be granted to the Petitioner.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishi, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

1  IT IS SO ORDERED.

2  **Dated:     January 15, 2009**                    **/s/ John M. Dixon**
                                                UNITED STATES MAGISTRATE JUDGE